UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT JACKSON,

      Petitioner,

v.

CALVIN JOHNSON, *et al.*,

      Respondents.

Case No. 2:20-cv-02100-KJD-DJA

**ORDER**

I.    <u>Introduction</u>

      This action is a *pro se* petition for a writ of habeas corpus by Nevada prisoner Robert Jackson. Respondents have filed a motion to dismiss. The Court will grant that motion in part and deny it in part. The Court will dismiss certain of Jackson's claims. The Court will set a schedule for Respondents to file an answer responding to the claims not dismissed, and for Petitioner to file a reply.

II.    <u>Background</u>

      After a jury trial in August 2014, Jackson was found guilty of multiple crimes stemming from a shooting in Las Vegas. Trial Transcripts, Exhs. 83, 85, 90, 92, 93, 95, 97, 99, 100 (ECF Nos. 13-33, 13-35, 13-40, 13-42, 13-43, 13-45, 14-2, 14-4, 14-5). Following the verdict, the trial court granted Jackson a new trial on two of the charges (Counts 8 and 9). Transcript, September 10, 2014, Exh. 109 (ECF No. 14-14); Order, Exh. 110 (ECF No. 14-15). The State appealed from that order. Notice of Appeal, Exh. 113 (ECF No. 14-18).

      At a sentencing hearing on February 18, 2015, Jackson was sentenced to prison terms as follows: on Count 1, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement; on Count 2,

attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, consecutive to Count 1; on Count 3, battery resulting in substantial bodily harm, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Counts 1 and 2; on Count 4, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, consecutive to Counts 1, 2 and 3; on Count 5, battery, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Count 4; on Count 6, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, consecutive to Counts 1, 2, 3, 4 and 5; on Count 7, battery, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Count 6; and on Count 10, possession of a firearm by an ex-felon, to a maximum of 4 years, with a minimum parole eligibility of 19 months, concurrent to all other counts. Transcript of Sentencing, Exh. 133 (ECF No. 14-38). The judgment of conviction was filed on March 4, 2015. Judgment of Conviction, Exh. 135 (ECF No. 14-40). Jackson appealed. Notice of Appeal, Exh. 140 (ECF No. 14-45). The Nevada Court of Appeals consolidated the appeals for their disposition and affirmed in part, reversed in part, and remanded on March 16, 2016. Order Affirming in Part, Reversing in Part and Remanding, Exh. 188 (ECF No. 15-48). The Nevada Court of Appeals reversed the grant of a new trial on Count 8 and vacated Count 1, and remanded. *Id*.

Jackson was re-sentenced on October 5, 2016. Transcript, October 5, 2016 (ECF No. 16-21). He received the same prison sentences as before on Counts 2, 3, 4, 5, 6, 7 and 10. *Id*. Counts 1, 8 and 9 were dismissed. *Id*. An amended judgment of conviction was filed on October 14, 2016. Amended Judgment of Conviction, Exh. 213 (ECF No. 16-23). In the amended judgment, Jackson was sentenced to prison as follows: on Count 2, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement; on Count 3, battery

resulting in substantial bodily harm, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Count 2; on Count 4, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, consecutive to Counts 2 and 3; on Count 5, battery, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Count 4; on Count 6, attempted murder, 4–10 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, consecutive to Counts 2, 3, 4 and 5; on Count 7, battery, 2–6 years, plus a consecutive term of 2–5 years for use of a deadly weapon and gang activity enhancement, concurrent with Count 6; and on Count 10, possession of a firearm by an ex-felon, to a maximum of 4 years, with a minimum parole eligibility of 19 months, concurrent to all other counts. *Id*. The aggregate total of Jackson's prison sentences is 45 years with a minimum parole eligibility of 18 years. *Id*.

Jackson appealed from the amended judgment of conviction. Notice of Appeal, Exh. 216 (ECF No. 16-26). The Nevada Court of Appeals affirmed on June 19, 2018. Order of Affirmance, Exh. 288 (ECF No. 17-48). The remittitur issued on July 16, 2018. Remittitur, Exh. 293 (ECF No. 18-3).

On June 19, 2019, Jackson filed a petition for writ of habeas corpus in the state district court. Petition for Writ of Habeas Corpus, Exh. 334 (ECF No. 18-44). The state district court denied the petition in a written order on October 16, 2019. Findings of Fact, Conclusions of Law, and Order, Exh. 343 (ECF No. 19-8). Jackson appealed. Notice of Appeal, Exh. 347 (ECF No. 19-12). The Nevada Court of Appeals affirmed on August 12, 2020. Order of Affirmance, Exh. 365 (ECF No. 19-30). The Nevada Court of Appeals ruled that the petition was untimely filed, and that Jackson did not show actual innocence such as to overcome the statute of limitations bar. *Id*. Jackson filed a petition for rehearing (Exh. 368 (ECF No. 19-33)), which was denied on October 23, 2020. Order Denying Rehearing, Exh. 369 (ECF No. 19-34). The remittitur issued on November 17, 2020. Remittitur, Exh. 370 (ECF No. 19-35).

Jackson also pursued two motions to correct illegal sentence, and a petition for writ of mandamus, related to his convictions in this case. The first was a motion to correct illegal sentence filed on November 30, 2015. Motion to Correct Illegal Sentence, Exh. 179 (ECF No. 15-39). The state district court denied that motion in a written order filed on June 14, 2016. Order Denying Defendant's Motion to Correct Illegal Sentence, Exh. 199 (ECF No. 16-9). Jackson appealed from that ruling, and, on July 12, 2017, the Nevada Supreme Court affirmed. Order of Affirmance, Exh. 244 (ECF No. 17-4). The remittitur issued on August 8, 2017. Remittitur, Exh. 247 (ECF No. 17-7).

Jackson filed his second motion to correct illegal sentence on December 20, 2017. Motion to Correct an Illegal Sentence, Exh. 261 (ECF No. 17-21). The state district court denied that motion in a written order filed on February 20, 2018. Order Denying Defendant's Pro Per Motion to Correct Illegal Sentence, Exh. 271 (ECF No. 17-31). Jackson appealed from that ruling, but, on June 22, 2018, the Nevada Supreme Court dismissed the appeal, ruling that Jackson's notice of appeal was untimely filed. Order Dismissing Appeal, Exh. 291 (ECF No. 18-1). The remittitur issued on July 18, 2018. Remittitur, Exh. 294 (ECF No. 18-4).

On February 23, 2018—before he filed his notice of appeal regarding his second motion to correct illegal sentence—Jackson filed, in the state district court, a motion for rehearing of that matter. Motion for Rehearing, Exh. 272 (ECF No. 17-32). The state district court denied that motion in a written order filed on August 21, 2018. Order Denying Defendant's Pro Per Motion for Rehearing on the Motion to Correct an Illegal Sentence, Exh. 296 (ECF No. 18-6). Jackson appealed from that ruling. Notice of Appeal, Exh. 297 (ECF No. 18-7). The Nevada Court of Appeals affirmed on October 16, 2019. Order of Affirmance, Exh. 344 (ECF No. 19-9). The remittitur issued on November 12, 2019. Remittitur, Exh. 350 (ECF No. 19-15).

On February 13, 2020, Jackson filed a petition for writ of mandamus in the Nevada Supreme Court. Petition for Writ of Mandamus, Exh. 357 (ECF No. 19-22). The Nevada Supreme Court denied that petition on February 27, 2020. Order Denying

Petition for Writ of Mandamus, Exh. 358 (ECF No. 19-23). A Notice in Lieu of Remittitur was issued on March 23, 2020. Notice in Lieu of Remittitur, Exh. 361 (ECF No. 19-26).

Jackson initiated this federal habeas corpus action, *pro se*, on November 13, 2020. *See* Petition for Writ of Habeas Corpus (ECF No. 7). On December 14, 2020, the Court granted Jackson's motion for leave to amend his petition to include two legal citations that were left out of his original petition. Order entered December 14, 2020 (ECF No. 6). Jackson's petition includes the following claims (organized and stated as in the petition):

Ground 1: The Nevada Court of Appeals ignored Petitioner's Second Direct Appeal when ruling that the Petition for the Writ of Habeas Corpus (Post-Conviction) was filed late.

Ground 2: Counsel were ineffective for failing to raise structural and instructional errors, issues of fundamental fairness, and dead-bang winners, in favor of the cursory analysis and conclusive arguments of far weaker issues.

Sub-Ground 1: The Prosecution constructively amended the indictment to assert a substantively different factual basis than Petitioner was originally indicted for.

Sub-Ground 2: Jury instruction no. 14 is fundamentally defective in defining an essential element of Attempted Murder.

Sub-Ground 3: The erroneous and misleading transferred intent instruction on Attempted Murder amounted to prosecutorial impairment of the grand jury's independent role.

Sub-Ground 4: The indictment is multiplicitious in charging the same offense in Counts 2, 4 and 6.

Sub-Ground 5: The indictment is Fatally Duplicitous in charging the Petitioner with attempting to murder a single individual and an alternative group of individuals in each count.

Sub-Ground 6: Actual Innocence: Conviction of Petitioner is Miscarriage of Justice.

Sub-Ground 7: Perjured testimony was used by prosecution to obtain Petitioner's indictment and conviction.

Sub-Ground 8: The government misconduct used to obtain the indictment against the Petitioner amounts to a Due Process violation.

Sub-Ground 9: The prosecution failed to preserve and disclose evidence favorable to the Petitioner.

Sub-Ground 10: The cumulative effect of prejudicial trial errors and insufficient evidence denied the Petitioner a fair trial. Jackson also includes several other specific claims, not asserted elsewhere in his petition, in Sub-Ground 10.

Sub-Ground 11: The original Superseding Indictment fails to state an offense in the attempted murder and gang enhancement counts.

Sub-Ground 12: The charges in the 2007 criminal complaint were broadened and substantially amended after the Statute of Limitations expired.

Petition for Writ of Habeas Corpus (ECF No. 7).

Respondents filed their motion to dismiss on July 8, 2021 (ECF No. 11), contending that Jackson's entire petition is barred by the statute of limitations, and that all his claims are unexhausted in state court and/or procedurally defaulted. The parties have fully briefed the motion to dismiss (ECF Nos. 20, 21).

III.    Discussion

A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions; the statue provides:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1). The one-year AEDPA limitations period is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2). The limitations period is also subject to equitable tolling; a habeas petitioner is entitled to equitable tolling if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009). Also, a petitioner may overcome a statute of limitations bar by showing that he is actually innocent. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

In this case, the amended judgment of conviction was filed on October 14, 2016. Amended Judgment of Conviction, Exh. 213 (ECF No. 16-23). When a state court judgment of conviction is amended, the one-year AEDPA limitations period is measured from the date on which the amended judgment becomes final, rather than the date of finality of the original judgment, because the petitioner is in custody pursuant to the amended judgment. *See Smith v. Williams*, 871 F.3d 684, 687–88 (9th Cir. 2017). This application of the statute of limitations, in the context of an amended judgment of conviction, was compelled by the Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010), which had held that a habeas petition filed after an amended judgment of conviction was entered on the same conviction was not a second or successive petition for purposes of 28 U.S.C. § 2244(b). *See Smith*, 871 F.3d at 687. On the other hand, when amendment of a judgment of conviction merely corrects a scrivener's error, it does not change the underlying judgment, but "only the written record that erroneously reflects that judgment," so that sort of amendment does not re-start the statute of limitations. *Gonzalez v. Sherman*, 873 F.3d 763, 769 (9th Cir. 2017).

The amended judgment of conviction in this case was entered after his resentencing, and it included sentences for fewer crimes than the original judgment of conviction. *Compare* Judgment of Conviction, Exh. 135 (ECF No. 14-40), *with* Amended

Judgment of Conviction, Exh. 213 (ECF No. 16-23). The amended judgment of conviction in this case did not merely correct a scrivener's error; it changed the convictions pursuant to which Jackson was sentenced, and it changed his sentence. Therefore, without tolling, the one-year statute of limitations applicable to this case would have begun to run when the amended judgment of conviction became final, which was September 17, 2018, 90 days after the Nevada Court of Appeals affirmed the amended judgment of conviction. *See* Order of Affirmance, Exh. 288 (ECF No. 17-48) (affirming amended judgment of conviction on June 19, 2018); *see also Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) ("[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").

Respondents argue, correctly, that Jackson receives no statutory tolling on account of his state habeas petition, because the Nevada Court of Appeals ruled that petition untimely and barred by the state statute of limitations. *See* Order of Affirmance, Exh. 365 (ECF No. 19-30); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's … petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).") This Court is not empowered to evaluate the state court's ruling that Jackson's state habeas petition was untimely filed. *See Pace*, 544 U.S. at 414 ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002))); *White v. Martel*, 601 F.3d 882, 884 (9th Cir.) ("[T]he adequacy analysis used to decide procedural default issues is inapplicable to the issue of whether a state petition was 'properly filed' for purposes of section 2244(d)(2)."), *cert. denied*, 562 U.S. 896 (2010).

However, the Court finds that Jackson's second motion to correct illegal sentence does qualify for statutory tolling under section 2244(d)(2). When the amended judgment of conviction became final, on September 17, 2018, Jackson was then litigating his second motion to correct illegal sentence. He had filed that motion on

December 20, 2017. Motion to Correct an Illegal Sentence, Exh. 261 (ECF No. 17-21). The state district court denied the motion on February 20, 2018 (Order Denying Defendant's Pro Per Motion to Correct Illegal Sentence, Exh. 271 (ECF No. 17-31)), but Jackson filed a motion for rehearing of the motion. Motion for Rehearing, Exh. 272 (ECF No. 17-32). The state district court denied the motion for rehearing on August 21, 2018 (Order Denying Defendant's Pro Per Motion for Rehearing on the Motion to Correct an Illegal Sentence, Exh. 296 (ECF No. 18-6)), and Jackson filed a timely notice of appeal from that ruling on August 27, 2018. Notice of Appeal, Exh. 297 (ECF No. 18-7). Therefore, when the amended judgment of conviction became final, and the AEDPA limitations period otherwise would have begun to run, the limitations period was tolled under section 2244(d)(2) on account of the then pending appeal regarding the denial of the motion for rehearing of Jackson's second motion to correct illegal sentence. That appeal was not completed—and the statutory tolling did not cease—until the remittitur was issued on November 12, 2019, after the Nevada Court of Appeals affirmed the denial of the motion. Order of Affirmance, Exh. 344 (ECF No. 19-9); Remittitur, Exh. 350 (ECF No. 19-15).

Respondents argue that, because Jackson filed an untimely interim appeal after the district court denied his second motion to correct illegal sentence, and while his motion for reconsideration was pending, his second motion to correct illegal sentence does not qualify for statutory tolling. *See* Motion to Dismiss (ECF No. 11), pp. 9–10; Reply in Support of Motion to Dismiss (ECF No. 21), p. 4. This argument is made without legal support, and, in this Court's view, it is meritless. Jackson's second motion to correct illegal sentence was properly filed in the district court, as was his motion for rehearing of that motion; the district court ruled on the merits of both the motion to correct illegal sentence and the motion for rehearing of that motion, and, on the appeal after the denial of the motion for rehearing, the Nevada Court of Appeals ruled on the merits of the appeal. The Court finds statutory tolling under section 2244(d)(2) to be

warranted, for Jackson's second motion to correct illegal sentence, from December 20, 2017, until November 12, 2019.

Consequently, the Court determines that Jackson's federal habeas petition was timely filed. The limitations period began running on November 13, 2019, the day after the remittitur was issued after the Nevada Court of Appeals affirmed the denial of Jackson's second motion to correct illegal sentence. *See* Fed.R.Civ.P. 6(a)(1)(A) (In computing limitations period, "exclude the day of the event that triggers the period."). Jackson submitted his federal habeas petition for filing exactly one year later, on November 13, 2020. It happens that 2020 was a leap year, meaning November 13, 2020, was actually 366 days later, but, when applying a statute of limitations, the filer receives the benefit of the extra leap year day, and a one-year limitations period expires on the anniversary of the date on which it began to run. *See United States v. Tawab*, 984 F.2d 1533, 1534 (9th Cir. 1993) ("year," in statute of limitations, means calendar year, not 365 days. during leap year.); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000), *cert. denied*, 521 U.S. 878 (2000) ("The anniversary date will be the last day to file even when the intervening period includes the extra leap year day."). Respondents' motion to dismiss will be denied to the extent it is based on the statute of limitations.

### B.   Exhaustion and Procedural Default

A federal court will not grant a state prisoner's petition for writ of habeas corpus unless the petitioner has exhausted available state-court remedies. 28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This means that a petitioner must give the state courts a fair opportunity to act on each claim before presenting those claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Byford*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

To exhaust a claim in state court, a habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988). On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" will not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994). 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose*, 455 U.S. at 520).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate a state-law procedural bar of an unexhausted claim, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the Nevada Court of Appeals' ruling that Jackson's state habeas petition was barred because it was untimely when filed in June 2019, the Court determines that any claims not yet presented by Jackson in state court would be ruled procedurally barred in state court if Jackson were to return to state court to attempt to exhaust those claims. *See* Order of Affirmance, Exh. 365 (ECF No. 19-30); Order Denying Rehearing, Exh. 369 (ECF No. 19-34). The anticipatory default doctrine applies to any claims not yet presented in state court, and the Court considers those claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317. Therefore, the Court determines that all the claims in Jackson's habeas petition are either exhausted or technically exhausted but subject to the procedural default doctrine.

Turning to the procedural default doctrine, then, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported

default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011). The Ninth Circuit Court of Appeals has held that the Nevada statute of limitations, Nev. Rev. Stat. 34.726, is adequate to support application of the procedural default doctrine. *See Valerio v. Crawford*, 306 F.3d 742, 776–78 (9th Cir. 2002); *Loveland v. Hatcher*, 231 F.3d 640, 642–43 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1268–70 (9th Cir.1996).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15. The *Martinez* Court, however, "qualif[ied] *Coleman* by

recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 8.

<u>Jackson's Claim of Actual Innocence</u>

A petitioner can overcome the procedural default of a claim, or a statute of limitations bar of a claim, by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (application to limitations bar). To demonstrate actual innocence under *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Taking into account all the evidence in the case, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 ("a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"); *House v. Bell*, 547 U.S. 518, 538 (2006) (regarding evidence to be considered). "Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329). "The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*. Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error," warranting "a review of the merits of the constitutional claims[.]" *Schlup*, 513 U.S. at 317.

Jackson asserts his claim of actual innocence as both a substantive claim—in his Sub-Ground 6—and as a means to attempt to overcome procedural defaults.

Jackson's claim of actual innocence is as follows, in its entirety:

> In violation of Petitioner's right of Due Process, as guaranteed by the United States Constitution, and the Fifth and Fourteenth Amendments, Petitioner was convicted of Attempting to Murder Marquell Scott, who was NOT present at the scene of the crime, intent was then transferred from Mr. Scott to victims named in Counts 2, 4 and 6. *See Schlllp v. Delo*, 513 U.S. 298 (1995); *Murray v. Carrier*, 477 U.S. 478; *Pellegrini v. State*, 34 P 3d. 519.
>
> On April 27th, 2018, Marquell Scott recorded a statement on video at an interview conducted by counsel. This was the first statement of testimony ever given by Scott in this entire case. Scott testified that he was not present during the shooting that occurred in front of Margaritaville on August 19, 2007 but learned about it after the fact. See Exhibit 4B.
>
> The fact that Marquell Scott was absent on the day of the shooting makes it impossible that he was the target of Attempted Murder by the Petitioner. This pertinent fact also dictates that there can be no transferring of intent from Scott to O'Dale (Count 2), Tate (Count 4) and Cutting (Count 6).
>
> To establish actual innocence, Petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, at 327–28 (quoting *Friendly*, "Is Innocence Relevant? Collateral Attack on Criminal Judgments," 38 V. Chi. L. Rev. 142, 160 (1970).
>
> The only evidence presented to the jury connecting Scott to this case was the Grand Jury testimony of Eric Pratt. Pratt offered the following testimony before the Grand Jury.
>
> "I think I heard him say he was aiming at Quell, Marquell." *See* Exhibit 1C42:24.
>
> Not only was Pratt's statement uncertain ("I think"); at his June 23, 2014 Pre-trial Deposition he testified that the Petitioner did not make the statement. *See* Exhibit D28: 14–21.
>
> However, had Marquell Scott himself been ordered by the State to testify he would have informed the trial jury that he was not present, this would have nullified Pratt's Grand Jury account, and no reasonable juror would have convicted the Petitioner of Attempting to Murder someone who wasn't even present during the shooting. Nor could intent be transferred from Scott to O'Dale (Count 2), Tate (Count 4) and Cutting (Count 6). Trial Counsel was ineffective for failure to investigate and interview Scott. *See U.S. v. Bagley*, 473 U.S. 667 (1985); *Napoe v. Illinois*, 360 U.S. 264 (1959).

Petition for Writ of Habeas Corpus (ECF No. 7), pp. 23–24.

Jackson makes no showing that the alleged 2018 statement of Marquell Scott is new evidence within the meaning of *Schlup*. "New" evidence is "relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327–28.

Furthermore, Jackson's theory is not one of factual innocence; it is a theory of legal innocence. And, moreover, it is a theory of legal innocence based on Nevada law. The Nevada Court of Appeals' conclusion that Marquell Scott's statement would not necessarily undermine the showing of transferred intent (*see* Order of Affirmance, Exh. 365, p. 2 (ECF No. 19-30, p. 3)), is a conclusion of state law, and the state court's ruling on that point is authoritative and beyond the scope of this federal habeas corpus action. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[S]tate court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

In short, the alleged declaration of Marquell Scott is not new evidence, and, at any rate, it does not show Jackson to be factually innocent. The Court determines that Jackson does not make a showing of actual innocence sufficient to overcome the procedural default of any claim. And, furthermore, because Jackson does not set forth a viable claim of actual innocence, his substantive actual innocence claim in Sub-Ground 6 will be dismissed.

Ground 1

In Ground 1, Jackson claims that the Nevada Court of Appeals ignored his second direct appeal when ruling that his state habeas petition was untimely filed. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 13–14. This does not state a viable claim for federal habeas corpus relief. *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) (errors in state post-conviction proceedings are not cognizable in federal habeas corpus action); *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) ("federal habeas relief is not available to redress alleged procedural errors in state post-

conviction proceedings"), *overruled on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012). Ground 1 will be dismissed as not cognizable in this action.

<u>Ground 2</u>

In Ground 2, Jackson claims that his trial and appellate counsel were ineffective for not investigating, and failing to assert, claims that he identifies in "Sub-Grounds 1 through 12." Petition for Writ of Habeas Corpus (ECF No. 7), pp. 14–15. Specifically, Jackson claims his trial counsel was ineffective for not asserting the claims in Sub-Grounds 1–5 and for not investigating the claim in Sub-Ground 6, and he claims his appellate counsel was ineffective for not asserting the claims in Sub-Grounds 1–5 and 7–11, and for not investigating the claim in Sub-Ground 6. *See id*. at 15.

Jackson's claims of ineffective assistance of counsel are subject to the procedural default doctrine, because his *pro se* state habeas action was barred by the state statute of limitations. *See* Order of Affirmance, Exh. 365 (ECF No. 19-30).

With regard to Jackson's claims of ineffective assistance of trial counsel, the Court determines that Jackson may be able to overcome the procedural defaults of those claims, under *Martinez*, if he can establish that they are "substantial" claims. *See Martinez*, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). The Court determines, though, that the question of the procedural default of those claims will be better resolved after Respondents file an answer and Jackson files a reply, and the merits of the claims are before the Court. The Court will, therefore, deny Respondents' motion to dismiss with respect to the claims of ineffective assistance of trial counsel in Ground 2, without prejudice to Respondents asserting the procedural default defense to those claims in their answer.

*Martinez* does not apply to claims of ineffective assistance of appellate counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (declining to expand the *Martinez* exception to claims of ineffective assistance of appellate counsel). Jackson does not suggest that he has any means to overcome the procedural default of his claims of ineffective assistance of appellate counsel. Therefore, Respondents' motion to dismiss will be granted with respect to the claims of ineffective assistance of appellate counsel in Ground 2, and those claims will be dismissed.

<u>Sub-Grounds 1, 2, 3, 5, 7, 8, 11 and 12</u>

In Sub-Grounds 1, 2, 3, 5, 7, 8, 11 and 12, Jackson makes claims that he did not assert in state court or that he asserted in state court only in his state habeas petition (Exh. 334 (ECF No. 18-44), which was ruled by the Nevada Court of Appeals to be barred by the state statute of limitations. *See* Order of Affirmance, Exh. 365 (ECF No. 19-30). Therefore, Sub-Grounds 1, 2, 3, 5, 7, 8, 11 and 12 are procedurally defaulted. Respondents' motion to dismiss will be granted as to these claims and they will be dismissed. The dismissal of these claims—and the dismissal of Sub-Ground 6—does not affect the denial of the motion to dismiss with respect to related claims of ineffective assistance of trial counsel in Ground 2.

<u>Sub-Ground 4</u>

In Sub-Ground 4, Jackson claims that, in violation of his federal constitutional rights, including the Double Jeopardy Clause, the indictment charged the same offense in Counts 2, 4 and 6. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 19–21. Jackson asserted a similar claim on the appeal concerning his second motion to correct illegal sentence (*see* Appellant's Opening Brief, Exh. 316, pp. 25–29 (ECF No. 18-26, pp. 26–30); Appellant's Reply Brief, Exh. 333, pp. 2–4, 9–12 (ECF No. 18-43, pp. 3–5, 10–13), and the Nevada Court of Appeals ruled on the claim on its merits. *See* Order of Affirmance, Exh. 344 (ECF No. 19-9). The Court determines that Sub-Ground 4 is exhausted and not procedurally defaulted. The Court will deny the motion to dismiss with respect to Sub-Ground 4.

Sub-Ground 9

In Sub-Ground 9, Jackson claims that, in violation of his federal constitutional

rights, the prosecution failed to preserve and disclose evidence favorable to him.

Petition for Writ of Habeas Corpus (ECF No. 7), pp. 44–47. Specifically, Jackson claims

the prosecution failed to disclose: "[f]ootage of two identically dressed individuals that

match a description of the shooter; bullet cores removed from the victims that were fired

from a different gun than the one removed from the scene[;] an impounded cell phone

that proves Petitioner never made calls concerning a firearm[;] and proof that Pratt was

induced to falsely implicate the Petitioner." *Id*. at 47.

In state court, on his first direct appeal, Jackson made a claim that the

prosecution failed to disclose exculpatory evidence. *See* Fast Track Statement, Exh.

165, pp. 13–15 (ECF No. 15-25, pp. 14–16). There, Jackson described as follows the

material allegedly withheld by the prosecution:

> The State was obligated to turn over all notes, audio and video
> recordings, statements, transcriptions and the like regarding witness Eric
> Pratt. Pratt was interviewed on August 20, 27 and 28, 2007 by the Las
> Vegas Metropolitan Police Department regarding the instant matter.
> Nothing regarding these meeting[s] was [ever] produced. Moreover,
> Detective Maholick was allegedly the lead detective on this case and
> appeared on Americas Most Wanted regarding the appellant. However,
> his name was never even mentioned in any discovery. The State's
> discovery abuses should have resulted in the dismissal of the indictment
> in its entirety.

*Id*. at 15 (ECF No. 15-25, p. 16).

Comparing Jackson's claim in this case to the claim he asserted in state court,

the Court determines that Sub-Ground 9 was exhausted on Jackson's first direct

appeal, and is not procedurally defaulted, to the extent that it is based on the

prosecution's alleged non-disclosure of statements of Eric Pratt. Beyond that,

Sub-Ground 9 is procedurally defaulted and will be dismissed.

Sub-Ground 10

Jackson's Sub-Ground 10 includes a cumulative error claim, in which he claims

that his federal constitutional rights were violated as a result of the cumulative effect of

the errors alleged elsewhere in his petition. *See* Petition for Writ of Habeas Corpus (ECF No. 7), p. 61. In addition, in Sub-Ground 10, Jackson asserts claims that are not asserted elsewhere in his petition.

The claim in Sub-Ground 10 that Jackson's rights were violated as a result of the cumulative effect of errors alleged elsewhere in his petition and not dismissed in this order is not procedurally defaulted. However, Sub-Ground 10 is procedurally defaulted, and will be dismissed, to the extent the cumulative error claim is based on claims asserted elsewhere in Jackson's petition but dismissed in this order. Additionally, the Court determines that the claims asserted in Sub-Ground 10 that are found nowhere else in Jackson's petition were not presented in state court; those claims are procedurally defaulted, and that part of Sub-Ground 10 will also be dismissed.

IV.   Conclusion

**IT IS THEREFORE HEREBY ORDERED** that Respondents' Motion to Dismiss (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss is granted as to the following claims in the Petition for Writ of Habeas Corpus (ECF No. 7), and these claims are dismissed:

- Ground 1;
- the claims of ineffective assistance of appellate counsel in Ground 2;
- Sub-Grounds 1, 2, 3, 5, 7, 8, 11 and 12;
- Sub-Ground 6;
- Sub-Ground 9, to extent based on alleged non-disclosure of material other than statements of Eric Pratt; and
- Sub-Ground 10, to the extent based on claims dismissed in this order and/or based on claims not asserted elsewhere in the petition

///

///

///

///

The Motion to Dismiss is denied as to the following claims in the Petition for Writ of Habeas Corpus (ECF No. 7):

-   the claims of ineffective assistance of trial counsel in Ground 2;

-   Sub-Ground 4;

-   Sub-Ground 9, to the extent based on alleged non-disclosure of statements of Eric Pratt;

-   Sub-Ground 10, to the extent based on the cumulative effect of errors alleged elsewhere in the petition and not dismissed.

**IT IS FURTHER ORDERED** that Respondents will have 90 days from the date of this order to file an answer, responding to Petitioner's remaining claims (those claims not dismissed in this order). Petitioner will then have 90 days to file a reply to Respondents' answer (this extends from 60 to 90 days the time for the reply set forth in the scheduling order in this case (ECF No. 6)).

DATED THIS 30 day of September , 2021.

KENT J. DAWSON,
UNITED STATES DISTRICT JUDGE