UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT JACKSON, | Case No. 2:20-cv-02100-KJD-DJA |
| Petitioner, | |
| v. | **ORDER** |
| CALVIN JOHNSON, *et al.*, | |
| Respondents. | |

I.      Introduction

        This action is a *pro se* petition for a writ of habeas corpus by Robert Jackson, an individual incarcerated at Nevada's High Desert State Prison. The case is before the Court for resolution of Jackson's amended habeas petition on its merits. The Court will deny Jackson's petition, deny a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

II.     Background

        After a jury trial in August 2014, Jackson was found guilty of multiple crimes stemming from a shooting on the Strip in Las Vegas in the early morning of August 19, 2007. The evidence at trial showed that the shooting occurred during a confrontation between two street gangs. Among the injured were three bystanders—Brittany O'Dale, Byron Tate and Tim Cutting—who had nothing to do with the gangs or the confrontation between them.

        Following the verdict, the trial court granted Jackson a new trial on two charges. Transcript, September 10, 2014, Exh. 109 (ECF No. 14-14); Order, Exh. 110 (ECF No. 14-15). The State appealed. Notice of Appeal, Exh. 113 (ECF No. 14-18).

Jackson was sentenced on February 18, 2015. Transcript of Sentencing, Exh. 133 (ECF No. 14-38). The judgment of conviction was filed on March 4, 2015. Judgment of Conviction, Exh. 135 (ECF No. 14-40). Jackson appealed from the judgment. Notice of Appeal, Exh. 140 (ECF No. 14-45).

The Nevada Court of Appeals consolidated the two appeals and affirmed in part, reversed in part, and remanded on March 16, 2016. Order Affirming in Part, Reversing in Part and Remanding, Exh. 188 (ECF No. 15-48).

On remand, the retrial was unnecessary, and Jackson was re-sentenced on October 5, 2016. Transcript, October 5, 2016 (ECF No. 16-21). An amended judgment was filed on October 14, 2016. Amended Judgment of Conviction, Exh. 213 (ECF No. 16-23). In the amended judgment, Jackson was sentenced to several prison terms, amounting in the aggregate to 45 years in prison with a minimum parole eligibility of 18 years. *Id*. Among Jackson's convictions were convictions of attempted murder of O'Dale, Tate and Cutting.

Jackson appealed from the amended judgment of conviction. Notice of Appeal, Exh. 216 (ECF No. 16-26). The Nevada Court of Appeals affirmed on June 19, 2018. Order of Affirmance, Exh. 288 (ECF No. 17-48).

On June 19, 2019, Jackson filed a petition for writ of habeas corpus in the state district court. Petition for Writ of Habeas Corpus, Exh. 334 (ECF No. 18-44). The state district court denied the petition in a written order on October 16, 2019. Findings of Fact, Conclusions of Law, and Order, Exh. 343 (ECF No. 19-8). Jackson appealed. Notice of Appeal, Exh. 347 (ECF No. 19-12). The Nevada Court of Appeals affirmed on August 12, 2020. Order of Affirmance, Exh. 365 (ECF No. 19-30). The Nevada Court of Appeals ruled that the petition was untimely filed, and that Jackson did not show actual innocence such as to overcome the statute of limitations bar. *Id*. Jackson filed a petition for rehearing (Exh. 368 (ECF No. 19-33)), which was denied on October 23, 2020. Order Denying Rehearing, Exh. 369 (ECF No. 19-34).

Jackson also pursued two motions to correct illegal sentence and a petition for writ of mandamus related to his convictions. The first was a motion to correct illegal sentence filed on November 30, 2015. Motion to Correct Illegal Sentence, Exh. 179 (ECF No. 15-39). The state district court denied that motion in a written order filed on June 14, 2016. Order Denying Defendant's Motion to Correct Illegal Sentence, Exh. 199 (ECF No. 16-9). Jackson appealed, and, on July 12, 2017, the Nevada Supreme Court affirmed. Order of Affirmance, Exh. 244 (ECF No. 17-4).

Jackson filed his second motion to correct illegal sentence on December 20, 2017. Motion to Correct an Illegal Sentence, Exh. 261 (ECF No. 17-21). The state district court denied that motion in a written order filed on February 20, 2018. Order Denying Defendant's Pro Per Motion to Correct Illegal Sentence, Exh. 271 (ECF No. 17-31). Jackson appealed, but, on June 22, 2018, the Nevada Supreme Court dismissed the appeal, ruling that Jackson's notice of appeal was untimely filed. Order Dismissing Appeal, Exh. 291 (ECF No. 18-1).

On February 23, 2018—before he filed his notice of appeal regarding his second motion to correct illegal sentence—Jackson filed, in the state district court, a motion for rehearing of that matter. Motion for Rehearing, Exh. 272 (ECF No. 17-32). The state district court denied that motion in a written order filed on August 21, 2018. Order Denying Defendant's Pro Per Motion for Rehearing on the Motion to Correct an Illegal Sentence, Exh. 296 (ECF No. 18-6). Jackson appealed. Notice of Appeal, Exh. 297 (ECF No. 18-7). The Nevada Court of Appeals affirmed on October 16, 2019. Order of Affirmance, Exh. 344 (ECF No. 19-9).

On February 13, 2020, Jackson filed a petition for writ of mandamus in the Nevada Supreme Court. Petition for Writ of Mandamus, Exh. 357 (ECF No. 19-22). The Nevada Supreme Court denied that petition on February 27, 2020. Order Denying Petition for Writ of Mandamus, Exh. 358 (ECF No. 19-23).

Jackson initiated this federal habeas corpus action, *pro se*, on November 13, 2020. *See* Petition for Writ of Habeas Corpus (ECF No. 7). On December 14, 2020, the

Court granted Jackson's motion for leave to amend his petition to include two legal citations that were left out of his original petition. Order entered December 14, 2020 (ECF No. 6). Jackson's amended petition includes the following claims (organized and stated as in the petition):

Ground 1: The Nevada Court of Appeals ignored Petitioner's Second Direct Appeal when ruling that the Petition for the Writ of Habeas Corpus (Post-Conviction) was filed late.

Ground 2: Counsel were ineffective for failing to raise structural and instructional errors, issues of fundamental fairness, and dead-bang winners, in favor of the cursory analysis and conclusive arguments of far weaker issues.

Sub-Ground 1: The prosecution constructively amended the indictment to assert a substantively different factual basis than Petitioner was originally indicted for.

Sub-Ground 2: Jury Instruction No. 14 was fundamentally defective in defining an essential element of attempted murder.

Sub-Ground 3: The erroneous and misleading transferred intent instruction on attempted murder amounted to prosecutorial impairment of the grand jury's independent role.

Sub-Ground 4: The indictment is multiplicitious in charging the same offense in Counts 2, 4 and 6.

Sub-Ground 5: The indictment is fatally duplicitous in charging the Petitioner with attempting to murder a single individual and an alternative group of individuals in each count.

Sub-Ground 6: Actual Innocence: conviction of Petitioner is miscarriage of justice.

Sub-Ground 7: Perjured testimony was used by prosecution to obtain Petitioner's indictment and conviction.

Sub-Ground 8: The government misconduct used to obtain the indictment against the Petitioner amounts to a due process violation.

Sub-Ground 9: The prosecution failed to preserve and disclose evidence favorable to the Petitioner.

Sub-Ground 10: The cumulative effect of prejudicial trial errors and insufficient evidence denied the Petitioner a fair trial. Jackson also includes several other specific claims, not asserted elsewhere in his petition, in Sub-Ground 10.

Sub-Ground 11: The original Superseding Indictment fails to state an offense in the attempted murder and gang enhancement counts.

Sub-Ground 12: The charges in the 2007 criminal complaint were broadened and substantially amended after the statute of limitations expired.

Petition for Writ of Habeas Corpus (ECF No. 7).

Respondents filed a motion to dismiss on July 8, 2021 (ECF No. 11), contending that Jackson's entire amended petition is barred by the statute of limitations, and that all his claims are unexhausted in state court and/or procedurally defaulted. On September 30, 2021, the Court granted the motion to dismiss in part and denied it in part. *See* Order entered September 30, 2021 (ECF No. 23). The Court dismissed the following claims:

- Ground 1;
- the claims of ineffective assistance of appellate counsel in Ground 2;
- Sub-Grounds 1, 2, 3, 5, 7, 8, 11 and 12;
- Sub-Ground 6;
- Sub-Ground 9, to extent based on alleged non-disclosure of material other than statements of Eric Pratt; and
- Sub-Ground 10 to the extent based on claims dismissed in the order and/or claims not asserted elsewhere in the petition.

The Court denied the motion to dismiss as to the following claims, which now remain to be adjudicated on their merits:

- the claims of ineffective assistance of trial counsel in Ground 2;
- Sub-Ground 4;
- Sub-Ground 9 to the extent based on alleged non-disclosure of statements of Eric Pratt; and
- Sub-Ground 10 to the extent based on the cumulative effect of errors alleged elsewhere in the petition and not dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.  Discussion

A.  Standard of Review

28 U.S.C. § 2254(d) (enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)) sets forth the standard of review generally applicable to claims asserted and resolved on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established

6

by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has also instructed that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

B.     Procedural Default

A federal court will not grant a state prisoner's petition for writ of habeas corpus unless the petitioner has exhausted available state-court remedies. 28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This means that a petitioner must give the state courts a fair opportunity to act on each claim before presenting those claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Byford*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate a state-law procedural bar of an unexhausted claim, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state

court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In the order on the motion to dismiss, the Court determined that, in light of the procedural history of this case, and, in particular, the Nevada Court of Appeals' ruling that Jackson's state habeas petition was barred because it was untimely when filed in June 2019, any claims not yet presented by Jackson in state court would be ruled procedurally barred in state court if Jackson were to return to state court to attempt to exhaust those claims. *See* Order entered September 30, 2021 (ECF No. 23), pp. 11–12. Therefore, the Court ruled that the anticipatory default doctrine applies to any claims not yet presented by Jackson in state court; the Court ruled those claims to be technically exhausted but subject to the procedural default doctrine. *See id*.

Under the procedural default doctrine, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a

possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. *Martinez*, 566 U.S. at 9.

C.    Ineffective Assistance of Counsel - Legal Standards

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See id*. at 697.

D.    Ground 2 – Claims of Ineffective Assistance of Trial Counsel

In Ground 2, Jackson claims that his trial and appellate counsel were ineffective for not investigating, and failing to assert, claims that he identifies in "Sub-Grounds 1

through 12." Petition for Writ of Habeas Corpus (ECF No. 7), pp. 14–15. Specifically, Jackson claims his trial counsel was ineffective for not asserting the claims in Sub-Grounds 1–5 and for not investigating the claim in Sub-Ground 6, and he claims his appellate counsel was ineffective for not asserting the claims in Sub-Grounds 1–5 and 7–11, and for not investigating the claim in Sub-Ground 6. *See id*. at 15.

In the order on Respondents' motion to dismiss (ECF No. 23), the Court determined that Jackson's claims of ineffective assistance of counsel in Ground 2 are subject to the procedural default doctrine, because his *pro se* state habeas action was ruled barred by the state statute of limitations. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–18.

Because *Martinez* does not apply to claims of ineffective assistance of appellate counsel, *see Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017), and because Jackson does not suggest that he has any means to overcome the procedural default of his claims of ineffective assistance of appellate counsel, the Court granted Respondents' motion to dismiss with respect to the claims of ineffective assistance of appellate counsel in Ground 2, and those claims were dismissed. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–18, 20.

With regard to Jackson's claims of ineffective assistance of trial counsel, the Court determined that Jackson may be able to overcome the procedural defaults of those claims, under *Martinez*, if he can establish that they are "substantial" claims. *See Martinez*, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). The Court determined, though, that the question of the procedural default of those claims would be better resolved in conjunction with the merits of Jackson's claims, and the Court therefore denied Respondents' motion to dismiss with respect to the claims of ineffective assistance of

trial counsel in Ground 2, without prejudice to Respondents asserting the procedural default defense to those claims in their answer. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–18, 21.

<u>Sub-Ground 1</u>

In Sub-Ground 1, Jackson claims that the prosecution filed an amended superseding indictment asserting a different factual basis for the attempted murder charges than appeared in the original superseding indictment. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 14–17.

In its ruling on the motion to dismiss, the Court dismissed the substantive claim in Sub-Ground 1 as procedurally defaulted. Order entered September 30, 2021 (ECF No. 23), pp. 18, 20. The Court denied the motion to dismiss, however, as to the claim of ineffective assistance of trial counsel incorporating Sub-Ground 1. *See id.* at 17, 21.

The crux of Jackson's claim is that the prosecution amended the superseding indictment with respect to the charges of attempted murder of Brittany O'Dale, Byron Tate and Tim Cutting, such as to change the factual scenario on which those claims were based. *See* Petition for Writ of Habeas Corpus (ECF No. 7), pp. 14–15; Reply (ECF No. 28), pp. 2–3; *compare* Superseding Indictment, Exh. 19 (ECF No. 12-19), pp. 3–7, *and* Amended Superseding Indictment, Exh. 66 (ECF No. 13-16), pp. 3–6.

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...." U.S. Const., Amendment V; *see also United States v. Adamson*, 291 F.3d 606, 614–15 (9th Cir. 2002). Therefore "[a]fter an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself." *Adamson*, 291 F.3d at 614.

Here, Jackson argues that the amended superseding indictment changed the attempted murder charges against him with regard to the intent element of attempted murder.

With respect to the charges of attempted murder of O'Dale, Tate and Cutting, the original indictment returned by the grand jury on June 29, 2011, charged as follows:

> [Jackson] did then and there wilfully, unlawfully, feloniously, and knowingly, for the benefit of, at the direction of, or in affiliation with, a criminal gang, to-wit: SQUAD GANG aka SQUAD UP aka YOUNG BALLER'S SQUAD, which has as one of its common activities engaging in felonious criminal activities other than the conduct which constitutes the primary offense, and the Defendant with specific intent to promote, further, or assist the activities of the above-said gang, did then and there, without authority of law, and malice aforethought, attempt to kill BRITTANY ODALE, a human being, by shooting the said BRITTANY ODALE, with a deadly weapon, to-wit: a firearm.

Indictment, Exh. 5, p. 3 (ECF No. 12-5, p. 4) (This is the charge of attempted murder of O'Dale; the charges of attempted murder of Tate and Cutting in the original indictment are essentially identical (*see id*. at 3–4 (ECF No. 12-5, pp. 4–5)).).

On September 28, 2011, the prosecution filed a superseding indictment against Jackson and Markus Burton. *See* Superseding Indictment, Exh. 19 (ECF No. 12-19). Like the original indictment, the superseding indictment was signed by the grand jury foreperson. *See id*. at 10 (ECF No. 12-19, p. 12). In the superseding indictment, the attempted murders were charged as follows:

> [Jackson and Burton] did then and there wilfully, unlawfully, feloniously, and knowingly, for the benefit of, at the direction of, or in affiliation with, a criminal gang, to-wit: SQUAD GANG aka SQUAD UP aka YOUNG BALLER'S SQUAD, which has as one of its common activities engaging in felonious criminal activities other than the conduct which constitutes the primary offense, and the Defendant with specific intent to promote, further, or assist the activities of the above-said gang, did then and there, without authority of law, and malice aforethought, attempt to kill BRITTANY ODALE, a human being, by shooting the said BRITTANY ODALE, with a deadly weapon, to-wit: a firearm, Defendants being responsible under one or more of the following principles of criminal liability, to-wit: (1) by directly committing the crime and/or (2) by aiding or abetting each other in the commission of the crime by accompanying each other to the scene of the crime, MARKUS BURTON bringing a firearm to the scene of the crime, an altercation then ensuing between the Defendants and another group of individuals, ROBERT JACKSON then asking for the gun, MARKUS BURTON providing his gun to ROBERT JACKSON, ROBERT JACKSON then shooting the firearm given to him by MARKUS BURTON at MARQUELL SCOTT and/or Wood gang members, striking three people with  bullets, Defendants then fleeing the scene together, offering counsel and encouragement to each other throughout by actions and deeds acting in concert together throughout and/or (3) pursuant to a conspiracy to commit the crime.

*Id*. at 3–4 (ECF No. 12-19, pp. 5–6) (This is the charge of attempted murder of O'Dale; the charges of attempted murder of Tate and Cutting in the superseding indictment are essentially identical (*see id*. at 5–7 (ECF No. 12-19, pp. 7–9)).).

On June 16, 2014, the prosecution filed an amended superseding indictment against Jackson. Amended Superseding Indictment, Exh. 66 (ECF No. 13-16). The amended superseding indictment was not signed by the grand jury foreperson. *See id*. at 9 (ECF No. 13-16, p. 10). In the amended superseding indictment, the attempted murders were charged as follows:

> [Jackson] did then and there wilfully, unlawfully, feloniously, and knowingly, for the benefit of, at the direction of, or in affiliation with, a criminal gang, to-wit: SQUAD GANG aka SQUAD UP aka YOUNG BALLER'S SQUAD, which has as one of its common activities engaging in felonious criminal activities other than the conduct which constitutes the primary offense, and the Defendant with specific intent to promote, further, or assist the activities of the above-said gang, did then and there, without authority of law, and malice aforethought, attempt to kill BRITTANY ODALE, a human being, by shooting the said BRITTANY ODALE, with a deadly weapon, to-wit: a firearm, the Defendant being responsible under one or more of the following principles of criminal liability, to-wit: (1) by directly committing the crime and/or (2) by aiding or abetting MARKUS BURTON in the commission of the crime by accompanying MARKUS BURTON to the scene of the crime, MARKUS BURTON bringing a firearm to the scene of the crime, an altercation then ensuing between the Defendant and MARKUS BURTON and another group of individuals, Defendant then asking for the gun, MARKUS BURTON providing his gun to Defendant, Defendant then shooting the firearm given to him by MARKUS BURTON at BRITTANY ODALE and/or Wood gang members, striking four people with  bullets, Defendant and MARKUS BURTON then fleeing the scene together, offering counsel and encouragement to each other throughout by actions and deeds acting in concert together throughout and/or (3) pursuant to a conspiracy with MARKUS BURTON to commit the crime.

*Id*. at 3 (ECF No. 13-16, p. 4) (This is the charge of attempted murder of O'Dale; the charges of attempted murder of Tate and Cutting in the amended superseding indictment are essentially identical (*see id*. at 4–6 (ECF No. 13-16, pp. 5–7)).).

Jackson asserts that his trial counsel should have challenged the June 16, 2014, amendment of the superseding indictment, because, in his view, the amendment changed the theory upon which Jackson was alleged to have attempted to murder O'Dale, Tate and Cutting.

Both the superseding indictment and the amended superseding indictment alleged attempted murder on both a theory of direct responsibility ("by directly committing the crime") and on a theory of aiding and abetting. It is under the aiding and abetting theory that the language of the charge was changed with respect to whom Jackson shot at. Neither the original superseding indictment nor the amended superseding indictment specifically mentioned the concept of transferred intent, either with regard to the theory of direct responsibility or the theory of aiding and abetting. The Court finds that the alteration of the language of the attempted murder charges, with respect to the aiding and abetting theory, did not result in such a variance between the amended superseding indictment and the superseding indictment as to result in the charging of a different crime. There was no change at all to the language of the attempted murder charges alleging a theory of direct responsibility. Plainly, under both the superseding indictment and the amended superseding indictment, Jackson was charged with committing attempted murder either directly or by aiding and abetting Burton.

The Supreme Court has stated that "[i]t is doubtful whether this principle of fair notice has any application to a case of transferred intent[.]" *Bradshaw v. Richey*, 546 U.S. 74, 76–77 (2005); *see also United States v. Montoya*, 739 F.2d 1437, 1438 (9th Cir. 1984) (rejecting argument that transferred intent instruction deprived defendant of notice of the precise nature of the charge against him).

Considering the specific nature of the amendment of the superseding indictment in this case—changing only a factual detail with the aiding and abetting theory—and also cognizant of the Supreme Court's instruction that it is doubtful that the notice requirement applies with respect to application of the transferred intent doctrine, the Court determines that this claim of ineffective assistance of trial counsel is not substantial within the meaning of *Martinez*. Trial counsel did not perform unreasonably in not challenging the amendment of the superseding indictment, and Jackson was not

prejudiced by his counsel not doing so. The Court will deny relief on this claim of ineffective assistance of trial counsel on the ground of procedural default.

Sub-Ground 2

In Sub-Ground 2, Jackson claims that Jury Instruction No. 14 was fundamentally defective in defining an essential element of attempted murder. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 17–18.

In its ruling on the motion to dismiss, the Court dismissed the substantive claim in Sub-Ground 2 as procedurally defaulted. Order entered September 30, 2021 (ECF No. 23), pp. 18, 20. The Court denied the motion to dismiss, however, as to the claim of ineffective assistance of trial counsel incorporating Sub-Ground 2. *See id*. at 17, 21.

Jury Instruction No. 14 stated the transferred intent doctrine:

> You are instructed that the doctrine of transferred intent provides that when a person attempts to murder a certain person, but by mistake or inadvertence injures a different person, the crime committed is the same as though the intended victim had been killed or injured.
>
> However, during an attack upon a group, a defendant's intent to kill need not be directed at any one individual. It is enough if the intent to kill is directed at the group.

Jury Instruction No. 14, Exh. 101 (ECF No. 14-6, p. 22).

Jackson asserts that Jury Instruction No. 14 misstated the law, in that the transferred intent doctrine is not applicable to charges of attempted murder. *See* Petition for Writ of Habeas Corpus (ECF No. 7), pp. 17–18. However, the case that Jackson cites in support of that argument, *Martinez v. Garcia*, 371 F.3d 600 (9th Cir. 2004), amended and superseded on denial of rehearing by *Martinez v. Garcia*, 379 F.3d 1034 (9th Cir. 2004), applies California law, not Nevada law. *See* Petition for Writ of Habeas Corpus (ECF No. 7), pp. 17–18. Under Nevada law, the doctrine of transferred intent applies to the crime of attempted murder. *See Ochoa v. State*, 115 Nev. 194, 197–200, 981 P.2d 1201, 1203–05 (1999).

Jackson does not show Jury Instruction No. 14 to have been an inaccurate statement of Nevada law. There was no reason for his trial counsel to challenge

Instruction No. 14. Jackson's trial counsel did not perform unreasonably in this regard, and Jackson was not prejudiced. This claim of ineffective assistance of trial counsel is insubstantial under *Martinez.* The Court will deny this claim of ineffective assistance of trial counsel as procedurally defaulted.

Sub-Ground 3

In Sub-Ground 3, Jackson claims that "[t]he erroneous and misleading transferred intent instruction on Attempted Murder amounted to prosecutorial impairment of the grand jury's independent role." Petition for Writ of Habeas Corpus (ECF No. 7), p. 18.

Here again, in its ruling on the motion to dismiss, the Court dismissed the substantive claim in Sub-Ground 3 as procedurally defaulted, but the Court denied the motion to dismiss as to the claim of ineffective assistance of trial counsel incorporating Sub-Ground 3. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–21.

The crux of this claim is Jackson's assertion that application of the doctrine of transferred intent negated the specific intent element of attempted murder. *See* Petition for Writ of Habeas Corpus (ECF No. 7), pp. 18–19. This assertion, however, is meritless; under Nevada law, the transferred intent theory was properly applied with respect to the attempted murder charges. Jackson's claim that his trial counsel was ineffective for not raising this issue is insubstantial. Jackson does not overcome the procedural default of the claim under *Martinez*. This claim of ineffective assistance of trial counsel will be denied as procedurally defaulted.

Sub-Ground 5

In Sub-Ground 5, Jackson claims that "[t]he indictment is Fatally Duplicitous in charging the Petitioner with attempting to murder a single individual and an alternative group of individuals in each count." Petition for Writ of Habeas Corpus (ECF No. 7), p. 21.

In its ruling on the motion to dismiss, the Court dismissed the substantive claim in Sub-Ground 5 as procedurally defaulted but denied the motion to dismiss as to the

claim of ineffective assistance of trial counsel incorporating Sub-Ground 5. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–21.

Jackson argues that the amended superseding indictment did not adequately give notice of whom he was accused of attempting to kill. *See* Petition for Writ of Habeas Corpus (ECF No. 7), pp. 21–23. Jackson refers to the following language in the charges of attempted murder of O'Dale, Tate and Cutting: "by aiding and abetting Markus Burton in the commission of the crime…" by "shooting the firearm … at [the victim] and/or Wood gang members, striking four people with bullets…." *See* Amended Superseding Indictment, Exh. 66, pp. 3–6 (ECF No. 13-16, pp. 4–7). Jackson does not show there to have been error in this regard, however. Jackson's trial counsel did not perform unreasonably in not making this argument, and Jackson was not prejudiced. This claim of ineffective assistance of trial counsel is not substantial under *Martinez*, and it will, therefore, be denied as procedurally defaulted.

Sub-Ground 6

In Sub-Ground 6, Jackson claims that he is actually innocent of attempted murder. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 23–24.

In its ruling on the motion to dismiss, the Court dismissed the substantive claim in Sub-Ground 6. Order entered September 30, 2021 (ECF No. 23), pp. 18, 20. However, the Court denied the motion to dismiss with respect to the claim of ineffective assistance of trial counsel incorporating Sub-Ground 6. *See id.* at 17, 21.

Jackson claims that his trial counsel was ineffective for not adequately investigating his claim of actual innocence. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 15, 24. As the Court discussed in its order on the motion to dismiss, Jackson's claim of actual innocence is based on an alleged 2018 statement of Marquell Scott, in which Scott stated he was not present at the shooting. *See* Order entered September 30, 2021 (ECF No. 23), pp. 14–16. In essence, Jackson argues that there could have been no transferred intent, supporting his attempted murder convictions, if Scott, the alleged target of his shootings, was not present. But, as the Court pointed out in the

order on the motion to dismiss, the Nevada Court of Appeals ruled that Scott's statement would not necessarily undermine the showing of transferred intent. *See id*. at 16; *see also* Order of Affirmance, Exh. 365, p. 2 (ECF No. 19-30, p. 3) ("In addition, Jackson did not demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the … new evidence." (quoting *Berry v. State,* 131 Nev. 957, 966, 363 P.3d 1148, 1154 (2015)).). Given the ruling of the Nevada Court of Appeals, Jackson makes no showing that further investigation by his trial counsel regarding Scott's presence at, or absence from, the scene of the shooting, could have had any impact on the outcome of the trial. This claim of ineffective assistance of trial counsel is insubstantial, Jackson does not overcome the procedural default of the claim under *Martinez*, and the Court will deny the claim as procedurally defaulted.

      E.    Sub-Ground 4 and Related Ineffective Assistance of Trial Counsel Claim

      In Sub-Ground 4, Jackson claims that, in violation of his federal constitutional rights, including the Double Jeopardy Clause, the indictment charged the same offense in Counts 2, 4 and 6. Petition for Writ of Habeas Corpus (ECF No. 7), pp. 19–21. In Ground 2, Jackson claims that his trial counsel was ineffective for not asserting the claim in Sub-Ground 4. *Id*. at 15.

      Counts 2, 4 and 6 are the charges of attempted murder of O'Dale, Tate and Cutting. As the Court understands Jackson's claim, it is that these charges are the same, and his conviction of them violates the Double Jeopardy Clause, because each resulted from his act of shooting at the same person.

      In the order on Respondents' motion to dismiss, the Court determined that Jackson asserted a claim similar to that in Sub-Ground 4 on the appeal concerning his second motion to correct illegal sentence, and that the Nevada Court of Appeals ruled on the claim on its merits; the Court therefore ruled that Sub-Ground 4 is exhausted and not procedurally defaulted and denied the motion to dismiss with respect to Sub-Ground 4. *See* Order entered September 30, 2021 (ECF No. 23), p. 18, 21.

The Nevada Court of Appeals ruled on this claim as follows:

> … Jackson alleged that, because his three attempted murder convictions all arose from the act of shooting at Marquell Scott, but missing him and hitting other individuals, his actions only constituted one offense. Based on this, Jackson argued the Double Jeopardy Clause prohibited the imposition of three consecutive sentences, and therefore, the district court exceeded its authority and imposed a sentence in excess of the statutory maximum by sentencing him to three consecutive terms. The district court ultimately concluded the Double Jeopardy Clause was not implicated and denied Jackson's motion.

*   *   *

> … [T]he district court reached the correct result in determining the Double Jeopardy Clause was not implicated. The Double Jeopardy Clause prohibits "multiple punishments for the same offense." *Jackson v. State*, 128 Nev. 598, 604, 291 P.3d 1274, 1278 (2012); however, here, each shot Jackson fired that hit a different individual constituted a separate offense.

Order of Affirmance, Exh. 344, pp. 2–3 (ECF No. 19-9, pp. 3–4).

In *Jackson*, the case cited by the Nevada Court of Appeals, the Nevada Supreme Court stated that, in applying the Double Jeopardy Clause, Nevada law is consistent with federal law, specifically the well-established rules announced in *Blockberger v. United States*, 284 U.S. 299 (1932):

> To determine whether two statutes penalize the "same offence," both the Supreme Court and this court look to *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) ("This Court has consistently relied on the test of statutory construction stated in Blockburger [ ] to determine whether Congress intended the same conduct to be punishable under two criminal provisions."); *Estes v. State*, 122 Nev. 1123, 1143, 146 P.3d 1114, 1127 (2006) ("Nevada utilizes the *Blockburger* test to determine whether separate offenses exist for double jeopardy purposes."). The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *see Barton v. State*, 117 Nev. 686, 692, 30 P.3d 1103, 1107 (2001) ("under *Blockburger*, if the elements of one offense are entirely included within the elements of a second offense, the first offense is a lesser included offense and the Double Jeopardy Clause prohibits a conviction for both offenses"), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006).

*Jackson*, 128 Nev. at 604–05, 291 P.3d at 1278.

This Court determines that the Nevada Court of Appeals reasonably applied *Blockberger*. The three attempted murder charges involved three different gunshots.

1    Petitioner does not show the Nevada Court of Appeals' ruling to have been contrary to,

2    or an unreasonable application of, any United States Supreme Court precedent.

3    Applying the AEDPA standard, the Court will deny Jackson habeas corpus relief on the

4    claim in Sub-Ground 4.

5         With regard to the related claim of ineffective assistance of trial counsel—the

6    claim that Jackson's trial counsel was ineffective for not asserting the claim in Sub-

7    Ground 4—in the order on Respondents' motion to dismiss, the Court determined that

8    Jackson could possibly overcome the procedural default of the claim, under *Martinez*, if

9    he could establish that Sub-Ground 4 is a "substantial" claim," and the Court deferred

10   the question of the procedural default to be considered in conjunction with the merits of

11   Jackson's claims. *See* Order entered September 30, 2021 (ECF No. 23), pp. 17–18, 21.

12   The Court now determines that it is plain that Jackson's attempted murder convictions

13   do not violate the Double Jeopardy Clause, and that this claim of ineffective assistance

14   of trial counsel is insubstantial. Jackson does not overcome the procedural default of

15   the claim under *Martinez*. The Court will deny this claim of ineffective assistance of trial

16   counsel as procedurally defaulted.

17        F.    Sub-Ground 9

18        In Sub-Ground 9, Jackson claims that, in violation of his federal constitutional

19   rights, under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution failed to preserve

20   and disclose evidence favorable to him. Petition for Writ of Habeas Corpus (ECF No. 7),

21   pp. 44–47.

22        In the order on the motion to dismiss, the Court determined that Sub-Ground 9

23   was exhausted on Jackson's first direct appeal, and is not procedurally defaulted, to the

24   extent it is based on alleged non-disclosure of statements of Eric Pratt; the Court ruled

25   the remainder of Sub-Ground 9 procedurally defaulted and dismissed all but the portion

26   of the claim alleging non-disclosure of statements of Eric Pratt. *See* Order entered

27   September 30, 2021 (ECF No. 23), pp. 19–21.

28

Jackson asserted a claim such as the remaining claim in Sub-Ground 9 in state court on his first direct appeal. *See* Fast Track Statement, Exh. 165, pp. 13–15 (ECF No. 15-25, pp. 14–16). There, Jackson claimed:

> The State was obligated to turn over all notes, audio and video recordings, statements, transcriptions and the like regarding witness Eric Pratt. Pratt was interviewed on August 20, 27 and 28, 2007 by the Las Vegas Metropolitan Police Department regarding the instant matter. Nothing regarding these meeting[s] was [ever] produced.

*Id*. at 15 (ECF No. 15-25, p. 16). The Nevada Supreme Court denied relief on that claim without discussion. *See* Order Affirming in Part, Reversing in Part and Remanding, Exh. 188, p. 2 n.2 (ECF No. 15-48, p. 3 n.2) ("We have carefully considered the additional arguments and conclude they are without merit.").

When a federal habeas court is faced with a claim that was decided, but not discussed, in state court, the federal habeas court applies the AEDPA standard of review. In such circumstances, the court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington*, 562 U.S. at 102.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotation marks omitted). The "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 434. A

"reasonable probability" is shown "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Ibid* (internal quotation marks omitted).

Jackson describes the statements of Pratt allegedly withheld from him as follows:

> Eric Pratt told Detective Antonio Campanella that he hadn't witnessed the shooting during their conversation on August 20th, 26th, 27th and 28th, of 2007. Campanella admitted to not recording or documenting any of these conversations except for 4 minutes of dialogue on August 28th, 2007, where Pratt offers information he'd "heard" about the shooting. *See* Grounds 7 and 8.

> Eric Pratt scheduled a meeting with Deputy District Attorney, Sonia Jimenez where he told her and State's investigator, Jerome Revels, that he was not an eyewitness to the shooting, and misled the Grand Jury into believing that he was. This conversation was not recorded or documented, and Pratt was not allowed to correct his misstatements to the Grand Jury. *See* Ground 7.

Petition for Writ of Habeas Corpus (ECF No. 7), p. 46. Jackson also appears to allege that "proof that Pratt was induced to falsely implicate the Petitioner" was withheld from him. *Id.*, p. 47, lines 12–13. But Pratt testified to all of this at trial. Pratt testified that he did not witness the shooting. Trial Transcript, August 15, 2014, Exh. 93, pp. 84–86, 99–100, 183 (ECF No. 13-43, pp. 85–87, 100–101, 184). He testified that he told a prosecutor and investigator that he did not witness the shooting. *Id.*, pp. 165–73 (ECF No. 13-43, pp. 166–74); *see also id.* at 37–40 And, he testified that he felt pressured to implicate Jackson. *Id.* at 123–24. In fact, the point that Pratt felt pressured to implicate Jackson was a main theme of Jackson's counsel's cross-examination of Pratt. *See id.* at 132–73 (ECF No. 13-43, pp. 133–174). Jackson makes no showing that any of this information, from Pratt's statements, was not disclosed to him. And, moreover, Jackson could not show prejudice from such alleged nondisclosure—that is, that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different—because this information was in fact elicited from Pratt at trial.

So, Jackson's Brady claim obviously fails because the information at issue was was actually testified to at trial. It was not unreasonable for the Nevada Court of

Appeals to deny relief on this claim. Applying the AEDPA standard of review here, the Court will deny Jackson habeas corpus relief on this claim.

G.   Sub-Ground 10

Jackson's Sub-Ground 10 includes a cumulative error claim, in which he claims that his federal constitutional rights were violated as a result of the cumulative effect of the errors alleged elsewhere in his petition. *See* Petition for Writ of Habeas Corpus (ECF No. 7), p. 61. In addition, in Sub-Ground 10, Jackson asserts claims that are not asserted elsewhere in his petition.

In the order on the motion to dismiss, the Court determined that the claim that Jackson's rights were violated as a result of the cumulative effect of errors alleged elsewhere in his petition and not dismissed is not procedurally defaulted to the extent of those predicate claims, and the Court denied the motion to dismiss with respect to Sub-Ground 10 to that extent; the Court however, dismissed the remainder of Sub-Ground 10 as procedurally defaulted. *See* Order entered September 30, 2021 (ECF No. 23), pp. 19–21.

The Court will deny Jackson relief on the remaining cumulative error claim in Sub-Ground 10, because the Court does not find there to have been any error, and there is, therefore, no error to be considered cumulatively.

H.   Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

denial of a constitutional right and that jurists of reason would find it
debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074,
1077–79 (9th Cir. 2000).

Applying the standard articulated in *Slack*, the Court finds that a certificate of
appealability is unwarranted. The Court will deny Jackson a certificate of appealability.
(This does not, however, preclude Jackson from filing a notice of appeal in this case
and seeking a certificate of appealability from the court of appeals.)

IV.   Conclusion

**IT IS THEREFORE HEREBY ORDERED** that Petitioner's Amended Petition for
Writ of Habeas Corpus (ECF No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter
judgment accordingly.


DATED THIS __13__ day of ___June_____, 2022.


_____
KENT J. DAWSON
UNITED STATES DISTRICT JUDGE